[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-12389

_____

D.C. Docket No. 1:11-cv-00571-WBH

GREGORY LAWLER,

Petitioner - Appellant,

versus

WARDEN,

Respondent - Appellee.

_____

Appeal from the United States District Court for the
Northern District of Georgia

_____

(December 10, 2015)

Before TJOFLAT, WILSON and MARTIN, Circuit Judges.

PER CURIAM:

Gregory Lawler appeals the district court's denial of his 28 U.S.C. § 2254

habeas petition.  He raises claims under *Strickland v. Washington*, 466 U.S. 668,

104 S. Ct. 2052 (1984) and *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763

(1972).[1]   Lawler argues his trial counsel were ineffective because they failed to (1) adequately investigate his mental health, (2) retain a forensic pathologist, and (3) adequately interview and cross-examine Jabus Steed, a witness for the prosecution. Lawler also asserts the prosecution knowingly offered false testimony.   Upon review of the record, consideration of the parties' briefs, and after the benefit of oral argument, we affirm the district court.

## I.   BACKGROUND

In October 1997, Atlanta police officers John Sowa and Patricia Cocciolone escorted Lawler's intoxicated girlfriend, Donna Rodgers, to her and Lawler's apartment.   Lawler was in the apartment at such time.   Upon the officers' arrival, Lawler placed an AR-15 rifle next to the front door.   He then opened the door, allowed Rodgers to enter, and attempted to shut the door on the officers.   Sowa put his hand up to hold the door open and asked Lawler to confirm that Rodgers lived in the apartment.   In response, Lawler grabbed the AR-15 and began shooting at the officers, who immediately fled.   Lawler followed the officers, firing 15 shots.   He shot Sowa five times in the back, buttocks, and chest, and shot Cocciolone three times in the arm, head, and buttocks.   Sowa died immediately; Cocciolone survived with severe injuries.   Both officers were found with their pistols snapped in their

---

[1] The State of Georgia (State) previously rejected Lawler's *Strickland* claims on the merits and held Lawler's *Giglio* claim is procedurally barred.

holsters.

## A. Trial Preparation.

Trial counsel's strategy for the guilt phase of trial was to argue that Lawler believed the officers were invading his home and, therefore, his actions were in self-defense or, alternatively, in the "heat of passion." To prepare, trial counsel, *inter alia*: interviewed Lawler's neighbors, Rodgers, and Cocciolone; discussed the crime with the prosecution's firearms expert; unsuccessfully sought to obtain a ballistics expert;[2] and interviewed Lawler's co-worker Steed.[3] Trial counsel spoke to Steed in order to rebut his potential testimony that Lawler dislikes police.

Trial counsel's mitigation strategy was to humanize Lawler and show that he has significant mental health issues. Prior to trial, trial counsel interviewed Lawler, his mother, and his brother about Lawler's mental health and background. Through these interviews, trial counsel learned that Lawler has experienced depression and anxiety. But, Lawler, his brother, and his mother did not mention any other mental health issues. They also did not report any family history of mental illness. Lawler's brother and mother did note, however, that Lawler had a "normal," middle-class childhood. In addition to these interviews, trial counsel retained a psychiatrist, Dr. Michael Hilton, to evaluate Lawler. Hilton met with Lawler twice,

---

[2] According to trial counsel, no such experts were willing to assist with the case.

[3] Lawler disputes that trial counsel spoke to Steed, but during the State habeas proceedings, trial counsel testified to speaking with Steed.

briefly met with Rodgers and Lawler's mother and brother, and reviewed the police reports related to Lawler's arrest.   Hilton obtained family, personal, legal, present living situation, substance abuse, medical, psychiatric, and present offense "histories" from Lawler.   Ultimately, Hilton diagnosed Lawler with paranoid personality disorder.

## B. Trial.

At the guilt phase, the prosecution attempted to paint Lawler as a malicious person who has a vendetta against the police.   In support thereof, the prosecution offered testimony from Steed suggesting Lawler dislikes police.   It also elicited testimony from Cocciolone that Lawler shot her, walked over to her, and then shot her again "execution-style."   During opening statements, trial counsel told the jury that "the doctors" would refute this account of the crime, yet they did not offer an expert to rebut the account.   At the same time, they did obtain testimony from Cocciolone's emergency room surgeon that he did not find gun residue on Cocciolone even though residue is typically found on a victim shot at close range.

At the penalty phase, Rodgers, Hilton, and Lawler's mother and brother testified.   Hilton discussed Lawler's paranoid personality disorder and Lawler's history of depression and anxiety.   Hilton also testified that he felt confident in his evaluation and did not believe it was necessary to further investigate Lawler's mental health.   The jury found Lawler guilty of murdering Sowa and sentenced him

4

to death, relying on two aggravating circumstances: murder of a police officer and murder during the commission of a battery (against Cocciolone).

## C. State Habeas Proceedings.

Lawler's habeas counsel proffered testimony from a psychiatrist, Dr. Pablo Stewart; additional testimony from Hilton; testimony from a forensic pathologist, Dr. Jonathan Arden; testimony from a clinical neuropsychologist, Dr. Dale Watson; and testimony or affidavits from Lawler's extended family members, a former college professor, a past girlfriend, neighbors, co-workers, Steed, and others. Some of the family affidavits stated Lawler has a family history of bipolar disorder, and the neighbor affidavits suggested that one of the prosecution's eyewitnesses did not like Lawler. Relying on these affidavits, a record review, and a meeting with Lawler, Stewart concluded Lawler is bipolar. Likewise, after reviewing the affidavits, Hilton revised his diagnosis of Lawler to include bipolar. Watson conducted a neuropsychological evaluation of Lawler and testified, among other things, that Lawler had impairment in the right hemisphere of his brain that is associated with bipolar disorder. The remaining forensic expert, Arden, opined that Lawler did not walk over to Cocciolone and shoot her after an initial round of shots. Despite this new evidence, the lower state court denied Lawler's petition and the Georgia Supreme Court summarily affirmed.

## II.    STANDARD OF REVIEW

5

Because Lawler filed his petition after April 24, 1996, this appeal is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246, 127 S. Ct. 1654, 1664 (2007). In order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law," *Bell v. Cone*, 535 U.S. 685, 693, 122 S. Ct. 1843, 1849 (2002), AEDPA "establishe[d] a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001). *See also Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 360 (2002) (per curiam) (recognizing that the federal habeas court's evaluation of state court rulings is "highly deferential" and that state court decisions must be "given the benefit of the doubt").

Pursuant to AEDPA, habeas relief may not be granted for a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is "difficult to meet"—the petitioner "must show that the state court's ruling on the claim being presented in federal court was so

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 102–03, 131 S. Ct. 770, 786–87 (2011).

## III.    **DISCUSSION**[4]

### A. The State Did Not Commit Reversible Error under AEDPA in Denying Lawler's *Strickland* Claims.

In *Strickland*, the Supreme Court established a two-pronged test for determining whether a petitioner is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and (2) whether the deficient performance prejudiced the defense.   466 U.S. at 687–88, 104 S. Ct. at 2064.

To prove constitutionally deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S. Ct. at 2064   A court must adhere to "a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id.* at 689, 104 S. Ct. at 2065.   "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged

---

[4] As an initial matter, given the Georgia Supreme Court summarily affirmed the lower state court's denial of Lawler's habeas petition, this case implicates the issue currently before our en banc court in *Wilson v. Warden, Georgia Diagnostic Prison*, 774 F.3d 671 (11th Cir. 2014), *reh'g en banc granted*, *opinion vacated* (July 30, 2015)—whether we "look through" a summary affirmance to a lower state court opinion when considering a habeas petition.   However, the outcome in *Wilson* will not affect this decision.   Regardless of whether we "look through" the Georgia Supreme Court's summary affirmance, Lawler's claims fail.

conduct on the facts of the particular case, viewed as of the time of counsel's

conduct." *Id*. at 690, 104 S. Ct. at 2066.

*Strickland*'s prejudice prong requires a showing "that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different. *Id.* at 694, 104 S. Ct. at 2068. To assess the reasonable

probability of a different sentence, "we consider the totality of the available

mitigation evidence—both that adduced at trial, and the evidence adduced in the

habeas proceeding—and reweigh it against the evidence in aggravation." *Porter v.*

*McCollum*, 558 U.S. 30, 41, 130 S. Ct. 447, 453–54 (2009) (internal quotation marks

omitted and alterations adopted).

Finally, "[t]here is no reason for a court deciding an ineffective claim . . . to

address both components of the [*Strickland*] inquiry if the [petitioner] makes an

insufficient showing on one." *Id.* at 697, 104 S. Ct. at 2069.

Lawler asserts trial counsel were ineffective because they failed to (1)

adequately investigate his mental health, (2) retain a forensic pathologist, and (3)

adequately interview and cross-examine Steed. The lower state court reasonably

concluded—and the Georgia Supreme Court could have reasonably found—that

Lawler's first claim does not meet *Strickland*'s deficient performance prong and the

remaining claims do not satisfy the prejudice prong. Therefore, the state courts'

rulings on these claims are not "so lacking in justification" to overcome the

8

deference we owe them under AEDPA.   *See Harrington*, 562 U.S. at 103, 131 S. Ct. at 786.

### 1. *Mental Health Investigation: Deficient Performance.*[5]

Lawler first asserts trial counsel's mental health investigation was deficient because: (1) trial counsel only obtained a competency evaluation of Lawler (Hilton's evaluation) even though they knew his neighbors "thought he acted crazy" and that he has a history of depression and anxiety; and (2) trial counsel did not otherwise investigate Lawler's mental health, beyond speaking to Lawler himself, his mother, and his brother.   However, these arguments are unavailing.

Lawler has not met his burden under AEDPA because "a reasonable lawyer could have decided, in the circumstances [faced by trial counsel], not to investigate" Lawler's mental health further.   *See Housel v. Head*, 238 F.3d 1289, 1294–95 (11th Cir. 2001).   First, despite Lawler's contentions, Hilton's evaluation was not merely a competency evaluation.   Trial counsel asked Hilton to examine Lawler and "offer opinions about his psychiatric state and in particular to address the issues of criminal responsibility and competency to stand trial."   To this end, Hilton examined Lawler twice before trial and reviewed his family history, personal history, educational background, legal history, present living situation, substance abuse history, medical

---

[5] Given Lawler does not meet *Strickland*'s deficient performance prong for this claim, we do not address the prejudice prong.   *See Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

history, psychiatric history, and circumstances of the offense.   Hilton also conducted a mental status examination.   In addition, the record supports the lower state court's finding that Hilton interviewed Lawler's mother, brother and girlfriend to gather additional evidence about Lawler.   Based on his evaluation, Hilton concluded that Lawler did not have any "major mental illness," but he did diagnose Lawler as suffering from paranoid personality disorder, which he told the sentencing jury involves "misperceptions of hostile intentions from other people."   Lastly, Hilton testified at trial that he did not need additional assessment or investigation to render an accurate summary of Lawler's mental health profile.[6]   *See id.* at 1296 (finding counsel reasonably forwent additional mental health investigation where a retained expert did not "offer[] any encouragement to proceed further").

Second, trial counsel specifically asked Lawler, his mother, and his brother about his mental health.   But, they did not report any family history of mental illness, nor did they mention that Lawler has bipolar or any similar mental disorder. *See Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066 ("Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant.   In particular, what investigation decisions are reasonable depends critically on such information.").   Given these

---

[6] Hilton testified that he did not do any psychological testing because it would only confirm what he already knew about Lawler.   Significantly, Hilton never told trial counsel that Lawler needed a neuropsychological evaluation.

circumstances, we must reject Lawler's argument that trial counsel's decision to forego further mental health investigation was deficient.  *See DeYoung v. Schofield*, 609 F.3d 1260, 1287–89 (11th Cir. 2010) (affirming state court rejection of deficient performance argument where counsel had mental health experts evaluate the defendant, the evaluations did not reveal the mental diagnoses alleged during habeas proceedings, and the defendant never told counsel that his family had a history of mental illness).

### 2. *Forensic Pathologist: Prejudice.*[7]

Lawler next claims trial counsel were ineffective because they failed to proffer a forensic pathologist to rebut the prosecution's theory that Lawler shot Cocciolone execution-style.   Lawler argues there is a reasonable probability that such testimony would have (1) led to a finding of self-defense or manslaughter, or (2) a life sentence rather than the death penalty.[8]   However, "in light of the overwhelming evidence" against Lawler, there is no reasonable probability that testimony from a forensic pathologist would have affected the outcome of trial.   *See*

---

[7] Given Lawler does not meet *Strickland*'s prejudice prong for this claim, we do not address the deficient performance prong.   *See Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

[8] Relatedly, Lawler asserts the lower state court made an unreasonable determination of fact in finding that trial counsel's failure to proffer a forensic pathologist was not prejudicial.   He claims the court erred in determining that Arden's testimony was cumulative of the testimony offered by Cocciolone's emergency room surgeon.   Assuming we "looked through" to this determination and found it to be unreasonable under § 2254(d)(2), we would review the court's "prejudice" decision de novo.   *See Cooper v. Sec'y, Dep't of Corr.*, 646 F.3d 1328, 1352–53 (11th Cir. 2011).   But, for the reasons below, Lawler's prejudice argument would fail even under de novo review.

*Stephens v. Kemp*, 846 F.2d 642, 650 (11th Cir. 1988) (finding that testimony from a firearms expert would not have "affected the outcome of the trial" given the "overwhelming evidence" that the defendant did not act in self-defense).

With respect to the guilt phase, Lawler placed the AR-15 next to his door prior to the officers "provoking" him, and he shot the officers as they ran away from him, hitting Sowa in the back and both officers in the buttocks.   Given these facts, even if Lawler showed he did not shoot Cocciolone execution-style, there is no reasonable probability that the jury would have found self-defense or manslaughter.   There is little to no evidence Lawler "acted out of passion resulting from provocation sufficient to excite such passion in a reasonable person," as is required to establish manslaughter under Georgia law.   *See Hall v. Lewis*, 692 S.E. 2d 580, 593 (Ga. 2010).   Nor is there any evidence, new or old, indicating that the two police officers did anything that a reasonable person would perceive as threatening.   *See Lott v. State*, 636 S.E.2d 102, 105 (Ga. Ct. App. 2006) (noting that "the defense of justification is based on a 'reasonable man' standard of behavior").

In addition, there is also no reasonable probability that such evidence would have led to a life sentence rather than the death penalty.   Lawler's jury unanimously voted for death finding two aggravating circumstances: (1) "the offense of murder was committed while the defendant was engaged in the commission of aggravated battery as to Patricia Cocciolone" and (2) "the offense of murder was committed

against any peace officer while engaged in the performance of official duties." Proof that Lawler did not shoot Cocciolone execution-style would not have diminished either of these statutory aggravating factors.   But, this does not end our prejudice inquiry, which requires us to reweigh the totality of the available mitigation evidence, old and new, and "reweigh it against the evidence in aggravation."   *Porter*, 558 U.S. at 41, 130 S. Ct. at 453–54.   As the State conceded during oral argument, the two most aggravating facts in this case relate to evidence that (1) Lawler stood over officer Cocciolone and shot her in the head after she had fallen and (2) Lawler disliked the police and had said "if they ever tried to enter his residence without proper paperwork that he would be ready for them, whatever the consequences might come."   Nonetheless, even discounting this nonstatutory aggravation in our reweighing analysis, we cannot say there is a reasonable probability of a different sentence given the overwhelming evidence that Lawler gunned down two police officers, without any reasonable provocation, while the officers were attempting to flee from him.[9]

3. *Interview and Cross-examination of Steed: Prejudice.*[10]

_____

[9] Lawler also argues trial counsel failed to investigate and adequately cross-examine one of Lawler's neighbors whose testimony corroborated the execution-style theory.   He asserts trial counsel were aware the neighbor was biased against him, yet they did not investigate this bias or impeach the neighbor.   Considering the overwhelming evidence against Lawler, he cannot show this purported deficient performance was prejudicial.

[10] Given Lawler does not meet *Strickland*'s prejudice prong for this claim, we do not address the deficient performance prong.   *See Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

Finally, Lawler claims trial counsel were ineffective because they failed to adequately interview and cross-examine Steed about Lawler's view of the police. At trial, the prosecution relied on testimony from Steed indicating Lawler does not like police to argue that animus against police, rather than mental illness, drove Lawler's actions.   According to Lawler, if trial counsel adequately interviewed and cross-examined Steed, Steed's testimony would not have given rise to this argument. Instead of painting Lawler as "anti-police," Steed's testimony would merely have reflected that Lawler holds a strong belief in individual rights.   However, as with testimony from a forensic pathologist, there is no reasonable probability that more favorable testimony from Steed would have affected Lawler's conviction or sentence.

## B. Lawler's *Giglio* Claim Fails.

Lawler asserts the prosecution knowingly presented misleading testimony through Steed in violation of *Giglio*.   The lower state court held this claim is procedurally barred under *Black v. Hardin*, 336 S.E.2d 754 (1985) because Lawler did not raise it at trial or on direct appeal.[11]   Such a finding generally bars review by this court if: (1) the state court plainly stated the finding is based on a state rule; (2)

---

[11] Under binding circuit precedent, the Georgia Supreme Court's summary denial of Lawler's certificate of probable cause does not preclude this court from upholding the state habeas court's procedural default ruling.   *See Lucas v. Warden, Ga. Diag. and Classification Prison*, 771 F.3d 785, 801 (11th Cir. 2014).

the state rule is not arbitrary; and (3) no federal questions are intertwined with the state rule. *Frazier v. Bouchard*, 661 F.3d 519, 524–25 (11th Cir. 2011). All these requirements are met here.[12] Nevertheless, Lawler may overcome this bar if he shows actual innocence or, alternatively, adequate cause for the default and that the default was prejudicial. *Gore v. Crews*, 720 F.3d 811, 816 (11th Cir. 2013) (per curiam). However, he does not meet either of these conditions. He has not proven actual innocence, and the only potential "adequate cause" that Lawler seems to put forth is his *Strickland* claim, which fails. In addition, even assuming this claim is not barred, it does not satisfy *Giglio* because, as discussed above, Steed's testimony was not material to the outcome of the guilt or penalty phase.[13]

For the foregoing reasons, we affirm.

**AFFIRMED**.

---

[12] As noted above, the lower state court plainly stated the claim is procedurally barred. Additionally, we have previously held that the *Black* procedural default rule is not arbitrary and is an independent state rule. *See Ward v. Hall*, 592 F.3d 1144, 1176 (11th Cir. 2010).

[13] We recognize that "*Giglio*'s materiality standard is more defense-friendly than" the standard put forth in *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). *Guzman v. Sec'y, Dep't of Corr.*, 663 F.3d 1336, 1348 (11th Cir. 2011) (internal quotation marks omitted).

15